## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STANLEY JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| HOLLYFRONTIER CORPORATION, | ) | **THE FEDERAL SECURITIES LAWS** |
| FRANKLIN MYERS, MICHAEL C. | ) | |
| JENNINGS, ANNE-MARIE N. | ) | |
| AINSWORTH, ANNA C. CATALANO, | ) | **JURY TRIAL DEMANDED** |
| CARNEY HAWKS, LELDON E. ECHOLS, | ) | |
| MANUEL J. FERNANDEZ, R. CRAIG | ) | |
| KNOCKE, ROBERT J. KOSTELNIK, | ) | |
| JAMES H. LEE, and MICHAEL E. ROSE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Stanley Jacobs ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against HollyFrontier Corporation ("HollyFrontier" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which the Company will acquire refining, marketing and other businesses of Sinclair Oil Corporation ("Sinclair Oil") from The Sinclair Companies ("Sinclair Holdco") through HollyFrontier's subsidiaries Hippo Parent Corporation ("New Parent") and Hippo Merger Sub, Inc. ("Parent Merger Sub") and Sinclair's subsidiary Hippo Holding LLC ("Sinclair NewCo") (the "Proposed Transaction").

2.     On August 3, 2021, HollyFrontier announced its entry into an Agreement and Plan of

Merger dated the preceding day (the "Merger Agreement").   Under the terms of the Merger Agreement, HollyFrontier will acquire certain refining, marketing and other businesses of Sinclair Oil, a wholly owned subsidiary of Sinclair Holdco, which businesses were reorganized into Sinclair NewCo after the signing of the Merger Agreement.  In return, Sinclair Holdco will be issued stock in New Parent, which will own all of HollyFrontier's businesses and the acquired Sinclair NewCo businesses.   Pursuant to the Merger Agreement, HollyFrontier will acquire Sinclair NewCo by effecting (a) a holding company merger whereby Parent Merger Sub will merge with and into HollyFrontier, with HollyFrontier surviving such merger as a direct wholly owned subsidiary of New Parent (the "HFC Merger"), and (b) immediately following the HFC Merger, a contribution whereby Sinclair Holdco will contribute all of the limited liability company interests of Sinclair NewCo to New Parent in exchange for shares of New Parent, resulting in Sinclair NewCo becoming a direct wholly owned subsidiary of New Parent (the "Sinclair Acquisition" and together with the HFC Merger, the "HFC Transactions").   Subject to the terms and conditions set forth in the Merger Agreement, at the effective time of the HFC Merger (the "Effective Time"), each share of common stock of HollyFrontier issued and outstanding immediately prior to the Effective Time will be automatically converted into one validly issued, fully paid and nonassessable share of common stock of New Parent ("New Parent Common Stock").   Following the consummation of the HFC Transactions, New Parent will assume HollyFrontier's listing on the New York Stock Exchange and be renamed "HF Sinclair Corporation."

3.       On October 29, 2021, HollyFrontier filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that HollyFrontier stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.   Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a stockholder of HollyFrontier.

10.      Defendant HollyFrontier is a Delaware corporation with its principal executive offices located at 2828 N. Harwood, Suite 1300, Dallas, Texas 75201.  HollyFrontier is an independent petroleum refiner and marketer that produces high value light products such as gasoline, diesel fuel, jet fuel and other specialty products.  The Company's common stock is traded on the New York Stock

Exchange under the ticker symbol "HFC."

11.     Defendant Franklin Myers ("Myers") has been Chairman of the Board since February 2019, and a director of the Company since July 2011.

12.     Defendant Michael C. Jennings ("Jennings") has been Chief Executive Officer ("CEO") and President of the Company since January 1, 2020, and is and has been a director since 2011.  Defendant Jennings previously served as Executive Vice President of the Company from November 2019 through December 2019, Executive Chairman of the Company from January 2016 until January 2017, CEO and President of the Company from July 2011 until January 2016, and Chairman of the Board from January 2013 to January 2016 and January 2017 to February 2019.

13.     Defendant Anne-Marie N. Ainsworth ("Ainsworth") is and has been a director of the Company since 2017.

14.     Defendant Anna C. Catalano ("Catalano") is and has been a director of the Company since 2017.

15.     Defendant Leldon E. Echols ("Echols") is and has been a director of the Company since 2009.

16.     Defendant Manuel J. Fernandez ("Fernandez") is and has been a director of the Company since 2020.

17.     Defendant R. Craig Knocke ("Knocke") is and has been a director of the Company since 2019.

18.     Defendant Robert J. Kostelnik ("Kostelnik") is and has been a director of the Company since July 2011.

19.     Defendant James H. Lee ("Lee") is and has been a director of the Company since July 2011.

20.     Defendant Michael E. Rose ("Rose") is and has been a director of the Company since

July 2011.

21.     Defendants identified in paragraphs 11-20 are referred to herein as the "Board" or the

"Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

22.     On August 3, 2021, HollyFrontier announced in relevant part:

DALLAS -- HollyFrontier Corporation (NYSE: HFC) ("HollyFrontier") and Holly
Energy Partners, L.P. (NYSE: HEP) ("HEP"), today announced they have entered into
definitive agreements under which HollyFrontier and HEP will acquire Sinclair Oil
Corporation and Sinclair Transportation Company from The Sinclair Companies
("Sinclair").

HollyFrontier Transaction

Under the terms of HollyFrontier's definitive agreement, HollyFrontier will acquire
Sinclair's:

- Branded marketing business and all commercial activities, which build on an
  iconic brand with exceptional customer loyalty;
- Renewable diesel business, which made Sinclair a first-mover in the space; and
- Two premier Rocky Mountain-based refineries.

As part of the transaction, HollyFrontier will form a new parent company, named "HF
Sinclair Corporation" ("HF Sinclair"), which will replace HollyFrontier as the public
company trading on the NYSE.  At the closing, existing shares of HollyFrontier will
automatically convert on a one-for-one basis into shares of common stock of HF
Sinclair, and HF Sinclair will issue approximately 60.2 million shares of common
stock to Sinclair, representing 26.75% of the pro forma equity of HF Sinclair with a
transaction value of approximately $1.8 billion based on HollyFrontier's fully diluted
shares of common stock outstanding and closing stock price on July 30, 2021.
HollyFrontier expects to seek the approval of its stockholders under applicable rules
of the New York Stock Exchange for the issuance of the HF Sinclair shares to Sinclair.

The transaction will transform HollyFrontier by accelerating its growth while
increasing scale and diversification; it also allows HollyFrontier to integrate
downstream into branded wholesale distribution.  HF Sinclair will drive incremental
free cash flow growth through its expanded refining business, integrated distribution
network, leading renewable diesel position and growing lubricants and specialties
business.  The transaction is expected to be accretive to HF Sinclair's earnings, cash
flow and free cash flow within the first full year, and to enable the combined company
to increase its commitment to return cash to stockholders.

Upon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company. Under the definitive agreements, Sinclair will be granted the right to nominate two directors to the HF Sinclair Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up, voting and standstill restrictions, as well as customary registration rights, for the HF Sinclair shares to be issued to the stockholders of Sinclair. The new company will be headquartered in Dallas, Texas, with combined business offices in Salt Lake City, Utah.

HEP Transaction

Under the terms of the HEP transaction, HEP will acquire Sinclair's integrated crude and refined products pipelines and terminal assets, including approximately 1,200 miles of pipelines, eight product terminals and two crude terminals with approximately 4.5 MMbbl of operated storage. In addition, HEP will acquire Sinclair's interests in three pipeline joint ventures including: Powder Flats Pipeline (32.5% non-operated interest), Pioneer Pipeline (49.9% non-operated interest) and UNEV Pipeline (25% non-operated interest; HEP operates the pipeline and owns the remaining 75% interest). The purchase price for the HEP transaction will consist of an equity issuance of 21 million HEP common units and the payment of $325 million of cash, subject to customary closing adjustments, representing a transaction value of approximately $758 million based on the closing price of HEP units on July 30, 2021. Upon closing of the HEP transaction, HEP's existing senior management team will continue to operate HEP. Under the definitive agreements, Sinclair will be granted the right to nominate one director to the HEP Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up restrictions and registration rights for the HEP common units to be issued to the stockholders of Sinclair. HEP will continue to operate under the name Holly Energy Partners, L.P.

The transactions have been unanimously approved by both HollyFrontier's and HEP's Board of Directors and are expected to close in mid-2022, subject to customary closing conditions and regulatory clearance, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. In addition, the HFC transaction and the HEP transaction are cross-conditioned on each other.

"HollyFrontier was formed through a transformational merger that facilitated a decade of significant stockholder returns along with growth and diversification into lubricants and renewables. We believe these transactions with Sinclair represent a similar inflection point, marking the beginning of our next chapter as HF Sinclair," said Mike Jennings, Chief Executive Officer of HollyFrontier and HEP. "With this accretive transaction, we are adding an integrated marketing business with an iconic brand while building on the strength of our expanded refining network, increasing our scale and accelerating the growth of our renewables business. Together, with Sinclair and the dedicated employees who make it successful, we will be positioned to further build this business, capture synergies, and generate cash that will facilitate both capital return to stockholders and further investment in the business."

Mr. Jennings continued, "At the same time, this transaction will significantly extend the reach of HEP. Strengthened by an integrated network of Sinclair pipelines and storage facilities, HEP will have the scale and incremental earnings power to capture new organic growth opportunities and increase cash returns to unitholders."

Ross Matthews, Chairman and Chief Executive Officer of Sinclair commented, "As the oil and gas industry has evolved in recent years, we have carefully considered how best to position Sinclair's refinery and logistics assets and their related operations for the future. We're confident these businesses—and the dedicated employees who operate them—will continue to thrive under this new ownership structure. We expect these businesses will benefit significantly from HollyFrontier's and HEP's operational expertise, their network of refineries and midstream assets in the Western U.S., and the flexibilities that come with being part of a larger organization. Sinclair's employees bring a wealth of talent and capability, including in the production of renewable diesel, which will be an important and growing line of business for HF Sinclair. Sinclair also adds to HF Sinclair an outstanding and extremely successful brand marketing team. The transaction will help accelerate the ongoing rapid expansion of our Sinclair branded retail sites and the iconic DINO brand."

"We also believe that HollyFrontier and HEP are an excellent cultural fit, with a shared commitment to integrity and respect for our employees, our communities and the environment," Mr. Matthews explained. "We anticipate a seamless transition for our employees, distributors and other stakeholders following the closing of the transactions."

Strategic and Financial Benefits

HollyFrontier's acquisition of Sinclair's branded marketing business, refineries and its renewable diesel business is expected to:

- Diversify HollyFrontier's Business with the Addition of Sinclair's Iconic Brand and Integrated Distribution Network. By adding a branded wholesale business, the combined company will have the opportunity to grow an iconic brand across a range of HollyFrontier products and geographies. HollyFrontier will add a footprint of over 300 distributors and 1,500 branded locations across 30 states, with over 2 billion gallons of annual branded fuel sales.
- Increase the Size and Scale of HollyFrontier's Renewables Business. Sinclair's renewable diesel unit ("RDU"), co-located at its Sinclair, Wyoming refinery, processes soybean oil and tallow into renewable diesel that is sold into California. The RDU has recently been expanded to produce 10,000 barrels per day and Sinclair is currently in the process of constructing a pre-treatment unit, allowing for further feedstock advantage and flexibility. Once the transaction is complete, the combined renewables business is expected to produce approximately 380 million gallons of renewable diesel per year and will be a leading renewable diesel producer in the U.S. with the size and scale to support logistical, procurement, feedstock and operational synergies.

- Add Complementary Rocky Mountain Refineries to HollyFrontier's Network. The Sinclair and Casper Refineries are complementary to HollyFrontier's existing refinery network and will expand the combined company's footprint in the Rocky Mountain region. Like HollyFrontier's existing refineries, the Sinclair refineries are feedstock advantaged, given their Northern Tier access to Canadian and Rocky Mountain crudes.

  The combined refining network will feature seven complex refineries in the Rocky Mountains, Mid-Continent, Southwest and Pacific Northwest regions and will have a combined crude oil processing capacity of 678,000 barrels per stream day. Each refinery has the complexity to convert crude oils into a high percentage of gasoline, diesel and other high-value refined products.

- Deliver Financial Benefits Through Accretion and Cost Savings. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year. The transaction is expected to generate $100 million in run-rate synergies, as well as another $100-200 million in one-time savings during the first two years post close through working capital optimization.

- Enable the Combined Company to Generate Significant Free Cash Flow, Maintain Strong Balance Sheet and Facilitate the Return of Capital to Stockholders. HollyFrontier's credit profile is expected to be enhanced through reduced leverage, increased scale and diversification of businesses. We expect the combined company to maintain a strong balance sheet and investment grade credit rating. Fueled by significant free cash flow generation, the combined company expects to return capital to stockholders through both dividends and share repurchases.

- Deepen HollyFrontier's and Sinclair's Commitment to ESG and Sustainability. HollyFrontier and Sinclair share a common philosophy on commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on each company's ongoing ESG efforts with increased renewables scale, a shared commitment to health and safety practices that best serve employees and communities, and a focus on risk management.

HEP's acquisition of Sinclair's integrated crude and refined product pipeline and terminal assets, including interests in three midstream joint ventures, is expected to:

- Expand HEP's Scale and Earnings. HEP's acquisition of Sinclair's expansive network of crude and product assets provides an integrated system with connectivity to key crude hubs in the Rockies, including Casper, Guernsey and Cheyenne. The acquired assets are expected to produce stable revenues supported by long-term minimum volume commitments from HF Sinclair.

- Extend HEP's Access to Growing Geographies through Finished Product Pipelines and Storage through Additional Joint Ventures. The assets in the acquired joint ventures serve multiple regions and are strategically located to meet increasing demand for finished product pipelines and storage.

Financial Targets and New Plan to Return Capital

HF Sinclair will focus on maintaining its investment grade balance sheet and delivering significant free cash flow while utilizing a balanced approach to capital investment and cash return to stockholders.  As part of its commitment to cash return, HF Sinclair intends to focus on the following strategy:

- Near-term: Reinstate the regular dividend of $0.35/share no later than the second quarter of 2022.
- Mid-term (next 18 months): Return $1 billion of cash to stockholders through regular dividends and share repurchases by the first quarter of 2023.
- Long-term (2023 and beyond): Implement a target payout ratio of 50% of adjusted net income in the form of regular dividends and share repurchases.

HEP's acquisition of Sinclair's logistics assets is expected to provide enhanced earnings power, allowing for further deleveraging and incremental cash return to unitholders.  For its commitment to cash return, HEP intends to incorporate the following strategy:

- Near-term: Continue to reduce leverage while paying a quarterly distribution of $0.35/unit.
- Mid-term (next 18 months): Reduce leverage ratio to 3.5 times EBITDA while targeting a distribution coverage ratio of 1.5 times.  HEP also expects to increase its quarterly distribution with the option of repurchasing units with excess free cash flow.
- Long-term (2023 and beyond): Maintain leverage ratio below 3.0 times EBITDA while targeting a distribution coverage ratio of 1.3 times.  HEP expects to continue increasing the quarterly distribution with the option of repurchasing units with excess free cash flow.

Advisors

Citi is serving as financial advisor to HollyFrontier, and Morgan, Lewis & Bockius is serving as HollyFrontier's legal counsel.  Bank of America Merrill Lynch is serving as financial advisor to the HEP Conflicts Committee, Bracewell is serving as HEP's legal counsel and Morris, Nichols, Arsht & Tunnell LLP is serving as the HEP Conflicts Committee's legal counsel.  Wachtell, Lipton, Rosen & Katz is serving as legal counsel to both HollyFrontier and HEP.

**The Proxy Statement Contains Material Misstatements or Omissions**

23.     The defendants filed a materially incomplete and misleading Proxy Statement with the

SEC and disseminated it to HollyFrontier's stockholders.  The Proxy Statement misrepresents or

omits material information necessary for the Company's stockholders to make an informed voting or

appraisal decision on the Proposed Transaction.

24.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning (a) financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company; and (b) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Citigroup Global Markets Inc. ("Citi").

**Material Omissions Concerning Financial Projections for HollyFrontier, Sinclair NewCo and the Pro Forma Combined Company**

25.    The Proxy Statement omits material information regarding the financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company, provided by HollyFrontier and Sinclair management and relied upon by Citi for their analyses, including the Company's financial projections, as well as any the changes to the July 1, 2001 preliminary financial forecasts proposed by Citi on or around July 28, 2001. *See* Proxy Statemßent at 18. The Proxy Statement also fails to disclose those projections.

26.    The Proxy Statement further wholly omits Sinclair NewCo's net income projections and further fails to disclose the line items underlying (a) Consolidated Adjusted EBITDA and (b) Deconsolidated Cash Flow from Operations.

27.    Finally, with respect to the financial projections for the pro forma combined company, the Proxy Statement fails to disclose the line items underlying (a) Consolidated Adjusted EBITDA (b) Adjusted Net Income Attributable to HollyFrontier Stockholders and (c) Deconsolidated Cash Flow from Operations.

28.    The omission of this information renders the statements in the "Certain Forecasted Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

29.    The Proxy Statement omits material information regarding the data and inputs

underlying the valuation analyses performed by Citi.

30.     The Proxy Statement describes Citi's fairness opinion and the various underlying valuation analyses.  That description, however, omits key inputs and assumptions forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding the Citi's work.  As a result, HollyFrontier stockholders cannot assess what significance to place on Citi's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

31.     With respect to Citi's *Discounted Cash Flow Analysis* of the "Sinclair Downstream Business," the Proxy Statement fails to disclose: (a) the standalone unlevered, after-tax free cash flows for the Sinclair Downstream Business for the fiscal years ending December 31, 2022, through December 31, 2025; (b) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis; and (c) the terminal values.

32.     With respect to Citi's *Discounted Cash Flow Analysis* of HollyFrontier, the Proxy Statement fails to disclose: (a) the standalone unlevered, after-tax free cash flows for HollyFrontier for the fiscal years ending December 31, 2022, through December 31, 2025; (b) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis;  and (c) the terminal values.

33.     With respect to Citi's *Selected Public Companies Analysis – Consolidated* for Sinclair Downstream Business, *Selected Public Companies Analysis – Sum-of-the-Parts* for Sinclair Downstream Business, *Selected Public Companies Analysis – Consolidated* for HollyFrontier and *Selected Public Companies Analysis – Sum-of-the-Parts* for HollyFrontier, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the companies observed in the analyses; and (b) the enterprise values for each company.

34.     With respect to Citi's *Selected Precedent Transaction Analysis* for Sinclair, the Proxy

Statement fails to disclose: (a) the individual multiples and financial metrics for each of the transactions observed in the analysis; and (b) the transaction values for each transaction.

35.    The omission of this information renders the statements in the "Certain Forecasted Financial Information" and "Opinion of HollyFrontier's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.  Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other HollyFrontier stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

37.    Plaintiff repeats all previous allegations as if set forth in full.

38.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citi.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

43.    Plaintiff repeats all previous allegations as if set forth in full.

44.    The Individual Defendants acted as controlling persons of HollyFrontier within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of HollyFrontier, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.    Each of the Individual Defendants was provided with or had unlimited access to copies

of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, HollyFrontier's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of HollyFrontier, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to HollyFrontier stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  November 24, 2021                    **LONG LAW, LLC**


By    */s/ Brian D. Long*
      Brian D. Long (#4347)
      3828 Kennett Pike, Suite 208
      Wilmington, DE 19807
      Telephone: (302) 729-9100
      Email: BDLong@longlawde.com

      *Attorneys for Plaintiff*